19-12790 Marilyn Santos v. Ross Prosen 19-12790 Marilyn Santos v. Ross Prosen Mr. Saverin, whenever you're ready. Good morning, Philip Saverin. I am representing the appellate in this case, which at this point is the estate of Deputy Prosen. The question presented in this appeal is whether an officer who is alleged to have used a radar gun without having the certification to do so can be liable under Section 1983 for a veteran officer's use of force that is alleged to be excessive in order to stop the vehicle in question. And we say that the answer is decidedly no. There's a little more, whether you're right or wrong, there's a little more involved, right? Because the allegations and some of the proof are that Officer Prosen and the other officers, or at least one of the other officers, was engaged in a conspiracy to stop cars to meet a ticket quota and to do so without basis, without probable cause, without reasonable suspicion, right? That's part of the, whether that gets you somewhere or not, that's part of the nucleus, right? Yes. Okay. Yes. And I didn't mean to misstate that at all. No, I didn't suggest that otherwise. I'm just saying that it's not that, it's not, for example, that Officer Prosen tagged somebody with the detection device, some other officer heard it on the system, and then went to stop the car on his or her own, not knowing anything else about what Officer Prosen had done. Right. The allegations are, and the charges against them indicate that they were involved in something more nefarious than that. Well, the criminal charges are different. Well, they're somewhat related. They are related. Here, right? They're related, but they're different. Yes, I agree. I agree that they're different. But they're based on different facts. The civil conspiracy allegation is that there was this conspiracy, this understanding that Mr., excuse me, Deputy Prosen would stop vehicles without probable cause or reasonable suspicion. What, that never materialized, because once... It did materialize. It did materialize because when Deputy Prosen, based on the allegations, and they're different from what, you know, what we say the true facts are, of course, we take the allegations as true, the allegation is, I mean, what did not materialize, Your Honor, is that the vehicle did not stop in response to... It stopped. It got stopped for a different reason. It doesn't matter. Well... I mean, let me ask you this question. Sure. This is a motion to dismiss, right? Yes. That's the procedural posture we have. Absolutely. And it's their burden to overcome qualified immunity, but we accept every factual allegation in the complaint as true, right? Yes. Okay. So there's a conspiracy between Deputy Prosen and Deputy... Carter. Carter, right? That's alleged. Yes. And part of the conspiracy is to unlawfully stop cars that Deputy Prosen has tagged for speeding without probable cause, right? Yes. Okay. If Deputy Carter had stopped the plaintiff's vehicle in this case, pursuant to the notification from Deputy Prosen, and had held that car there for three hours while he, quote-unquote, investigated them, could Deputy Prosen be sued for conspiracy to commit an unlawful Fourth Amendment seizure? That is the subject of the conspiracy, then, yes. Well, I'm asking you. The conspiracy is to stop cars without probable cause to meet a ticket quota. You agree that that's the allegation in the complaint? Yes, yes. I'm agreeing with you. Okay. But in this case, instead of using the maneuver to stop the car, Deputy Carter actually stops the car and holds the occupants for three hours while he questions them. Is Deputy Prosen liable, if all that is proven, for a conspiracy to violate a Fourth Amendment right to be free from unlawful seizure? If that's what happened, then yes. Okay. Tell me what the difference is between stopping the car for three hours and hitting the car with a maneuver affecting a Fourth Amendment seizure. I'd like that. Okay. The difference is that the stop, the force was used when the plaintiff, in this case, decided to flee. That created a different ground for stopping the vehicle, even if the initial reason for stopping the vehicle was improper. And we cite you the case of Davis v. State and the Georgia statute 46-395A. Davis says very clearly, this is a quote, inasmuch as the statute does not require a lawful stop, we need not reach Davis' argument under Terry v. Ohio. So, the reason for the stop here, or the claim that they're asserting in terms of the constitutional injury, was the means of the force used by Deputy Carter, even if, according to the allegation, there was this conspiracy beforehand. You're arguing like an intervening cause or something like that? It is not. There is no constitutional violation by Deputy Prosen. Absolutely none. Okay. Is there an alleged violation stated by Deputy Carter? Against Deputy Carter, yes. There's a conspiracy alleged now between Carter and Prosen. Not to use the excessive force. But to stop the cars. To stop the cars, that's the allegation, without having the probable cause to do so. Here's what I think. I think you may be on to something with regards to causation and damages at the end of the day for the excessive force. But I'm not sure you are right about qualified immunity. Because if the conspiracy was to, the alleged conspiracy, was to stop cars without probable cause to meet a ticket quota, it's foreseeable to the members of that conspiracy that cars are going to be stopped. Agreed or not agreed? Yes. Okay. The method of the stop may not have been foreseeable. And so the measure of damages for the excessive force may not be attributable through the conspiracy to Prosen. But that doesn't mean you get qualified immunity in every respect for the stop. What we would say, Your Honor, is that... Tell me what's wrong with that analogy. Because the vehicle, the driver, did not stop in response to Deputy Prosen turning on his lights and siren and... But you just told me that Prosen's liable for the stop. Liable for the stop had the driver pulled over. No, no, no. That's not the way you qualified it before. So I don't want to put words in your mouth. And I misstated. I'm not trying to trap you or anything. I just want to get an answer. So let me just put it again. Is Carter, on the facts alleged, entitled to qualified immunity for the stop and the way he affected the stop? Is Prosen or is Carter? Carter. Carter. I don't represent Carter. I know you don't. I know you don't. I mean, yes. There's a claim against Deputy Carter. Why doesn't the speeding, the alleged speeding of the plaintiffs in this case, also absolve Carter in terms of qualified immunity? Because it wasn't the speeding, it was the decision to flee once Deputy Prosen turned on his lights and siren. Okay. Decision to flee. Speeding. Whatever you call it. Why doesn't that give Carter qualified immunity? I apologize for not being clear. The speeding was before, obviously, Deputy Prosen turned on his lights and siren. Oh, no, no, no, no. The flight was afterwards. No, no. No, sir. The allegation in the complaint is that the stop was without probable cause. Right. The car was not speeding according to the complaint. Okay, so. Right? Correct. You're right about that. Okay. But what I'm saying. So you have a non-speeding car that is going to be stopped without probable cause, right? Yes. Yes. I think there's an important fact here, and that is that Deputy Prosen turned on his lights and siren, and it was only at that point, when they started to flee, that Deputy Prosen got involved. That Carter got involved. I'm sorry. Yes. I'm sorry. Yes. That Deputy Carter got involved. Right. I got it. And the problem that I have conceptually, Your Honor, is that clearly there was no conspiracy to use excessive force. The judge says that. But there was a conspiracy to affect the stop. There was a conspiracy to affect a stop. Yes. And. There's no qualified immunity for the stop. Because the stop, the force was used because they chose to flee instead of stop the vehicle. That is the difference why there is not. But then why is Carter, you've told, again, I don't want to put words in your mouth. I'm not trying to trap you in any way, please. You've told me, maybe you want to take this back. You've told me that Carter does not get qualified immunity for the stop and the way he affected the stop. That's what you've told me. You want to stick to that? Yes. Okay. Yes. And I guess I'm not drawing the distinction very well. Well, if it's a conspiracy. Because the conspiracy. Are you arguing lack of foreseeability? Are you arguing intervening cause? What are you arguing? Superseding cause? What are you arguing? Two things I'm arguing. One thing is that it was not part of the conspiracy. I think we all agree with that. No, no, no. We don't all agree. Not part of the conspiracy to use excessive force. But part of the conspiracy to stop the car. Yes. But not by means of excessive force. For qualified immunity purposes, how does it matter how the stop was affected? Because it was not part of the, let me just finish two things, okay? One thing is it was not part of the conspiracy. And so you can't be liable outside of the conspiracy for the use of excessive force when that wasn't part of the conspiracy. The cases are clear on that. The second thing is when it comes to the question of foreseeability, if we don't have a constitutional violation by Deputy Prozen, okay? If we don't have one, or even if we do, I would say, what you're now saying is that one officer can be liable for another officer's use of excessive force, even though the cases are legion, that cannot be the case absent a duty to intervene. Otherwise, you're having vicarious liability for one officer by the use of excessive force by another officer. That's not, that's not. Your statement of the law, respectfully, I don't think is complete. If you have a conspiracy between two officials to commit excessive force on somebody, with only one of the officials committing the excessive force, the second official who doesn't personally commit it may be liable. I agree 100% with that, but what I don't agree with here is that there was a conspiracy to use excessive force. And so the manner of the force, which is the basis for the claim, or the only claim, is not something for which Deputy Prozen would be liable for, either because it was not part of the conspiracy, or because then you're holding one officer liable for another officer's decision to use excessive force when there was no agreement, no understanding, no allegation of understanding to that effect. Okay. Hopefully, I may, whether or not you agree with it, hopefully I made my point clear. No, I think, I think I understand, and I was just trying to get an answer, and I wasn't trying to put you into a corner or anything like that. No, I understand, and hopefully I provided you with an answer. Okay, thank you, Mr. Snyder. You've got your full five minutes left for rebuttal. Mr. Kroger. Thank you. You may have pleased the court. Thomas Kroger on behalf of the Apolles, whom I'll refer to as the Santos family. It is squarely alleged that- Mr. Kroger, Mr. Kroger, let me tell you a fundamental problem I have with your theory and your allegations. You state that the defendant, the one before us, Prosen, was not qualified to operate a speed detection device, and therefore, it was unlawful for him to make a stop based on the speed detection device. You also say he wasn't qualified, and I've read all the statutes I could get my hands on about speed detection devices. I don't find any of them squarely stating that in state courts in Georgia, you can't consider the result of the speed detection device just because a person wasn't certified. There may be some, there's some that imply, but in any event, there's nowhere in the Fourth Amendment speed detection device unless he is certified by the training board to use it. You also say he wasn't certified in visual estimation of speed. I've looked everywhere. Let me rephrase that. My law clerk has looked everywhere, and I can't find anything formal or otherwise about officers having to be certified to visually estimate speed, but assuming that they do in Georgia, and assuming that a Georgia court won't recognize probable cause unless there's these certifications, that doesn't mean it violates the Fourth Amendment to stop somebody for speeding unless you use a speed detection device, or unless you're visually estimating it after being certified for that. So all these allegations about how it was unlawful because he wasn't certified, and they lied about whether he was certified or not, they're largely irrelevant in my mind to the Fourth Amendment issue. Please address my concerns about that. Thank you for that question, Your Honor. I think your questions are, and your points are well taken, but absent the ability to verify the speed, either through the use of a speed detection device or through the ability to visually estimate the speed of the vehicle, there is no way for Deputy Prozen to have formed an opinion about the speed of the vehicle. Is there some separate certification? Is there some separate certification, sorry, just to get clarification on Judge Karn's question. Is there some separate certification about visual detection? I mean, don't police officers every day kind of eyeball it? Correct. I don't know that there is a separate certification process to be able to visually estimate speed. But I think the central question here is... So you're telling me that if someone stops a motorist based on the fact the cop is sitting on the side of the road and somebody zooms past him and the cop floorboards it and catches up with him, that there can't be any probable cause it's an invalid arrest in the state of Georgia unless he used a speed detection device and was certified to use it? I think the answer to that question is no. But as applied to the case here, there is simply no other basis for Prozen to have thought that this vehicle was speeding. That's not alleged in the complaint. It's not alleged there at all. And as a matter of fact, the complaint does not directly allege an absence of probable cause, except when they're talking about an entirely separate claim against Carter in the statement of the counts and says Carter knew there was no probable cause. But it doesn't say that Prozen did that. It doesn't really say that Prozen didn't have a probable cause. I think the specific paragraph... I'm sorry. There is a common assumption and we have, I'll bet you there's six to 12 decisions of our court that says the standards that apply in determining whether you violate a federal constitutional right are federal standards. And the state courts can speak to them if they want to, but we're not bound by them. The state legislature can speak to them. We're not bound by them. We make our own determination. And if, for example, classic example, the state courts say in a particular situation, there's not probable cause to conduct a search unless there's clear and convincing evidence, the evidence is there, so forth. Some states have that for nighttime searches. That doesn't mean if you do a nighttime search and come into federal court with a result and there's just probable cause, not clear and convincing evidence, that it violates the Fourth Amendment to admit that. And your whole complaint seems to be based on the assumption that anything that's not cognizable in state court is not cognizable in a federal court involving a federal violation. And I'm not sure how you get around that. Well, I think it's axiomatic if you look at cases like US v. Harris that you cannot have a traffic stop unless you have probable cause for a traffic violation or reasonable suspicion of another crime. Oh, absolutely. I don't think Judge Connors disagrees with that. I don't think Judge Connors disagrees with that. His point is that the only sort of violation of the Fourth Amendment that you've alleged is really, the sum and substance of it is, is an alleged violation of state law. And he's saying that this violation of state law does not ipso facto violate the Fourth Amendment. What I would say in response to that is it's not a reasonable inference from the four corners of the complaint to suggest that probable cause existed in this case, or a traffic stop. My concern is related. It's not the same, but my concern on your side of the case is related. And it is this, that the complaint does not expressly allege, and we'll talk about inferences in a minute, but it does not expressly allege that the car was driving within the speed limit. Right? Do you agree with that? Correct. It does describe what the posted speed limit is, the stretch of I-95. Because if you had alleged this was a 65 mile per hour zone, and the car was driving consistently at 55, that, that'd be a different case. That would be a different case because you could at least argue then that Frozen had no basis, detection device or not, to stop the car from speeding, but there's no allegation like that expressly in the complaint, right? That is correct. So how do we know, or how do we infer the speed at which the car was going, notwithstanding Frozen's lack of certification? Well, that's, that is admittedly an issue. We don't know what speed the car was going, but the flip side of that is we can't rely on whatever speed Frozen claims that the car was going. So, so you would have us hold that a defendant has a constitutional right to have his, not a constitutional right not to be arrested absent probable cause, but a constitutional right not to be arrested based on a speed detection device unless the operator is certified in it. The, all that the law would permit is that the motorist, an occupant traveling that vehicle would have a right not to be seized without probable cause. So, so, so can I, let me just ask you this because I think one problem with the district court's order here is that that's the way the district court framed it, that there is a clearly established right not to be seized without probable cause. Well, of course there is. Of course there is. Like look at the plain language of the Fourth Amendment. But I mean we've said until we're blue in the face that that's not good enough for qualified immunity purposes, right? You've got to drill down. You don't necessarily, presumptively, you might need a case effectively on all fours, but not necessarily. There are some outlier situations in which obvious clarity might take over, but I mean isn't the district court framing the right in precisely the way that you're framing it to Judge Carnes and isn't that a problem on qualified immunity? On qualified immunity, I would submit, well first I think it's important to note that the district court actually has, you know, two opinions with respect to what constitutional right was violated. The primary opinion is the one that we've been primarily discussing today, which is the right to be free from a stop unsupported by probable cause. But the district court's alternative rationale, which speaks to the appellant's argument, is that even if there were probable cause or reasonable suspicion to stop the car based on its failure to stop for Officer Prosen, that there was still excessive force used in the course of that stop, and that that excessive force was also foreseeable. So there are potentially... But is there any allegation in the complaint that Prosen had any basis for foreseeing that there would, A, that there would be a driver fleeing when the light comes on, and B, that Carter would allegedly use excessive force in doing a pit maneuver? I didn't see it in the complaint. I think it's, perhaps it's dangerous language to say, but I think it is a reasonable inference and I think it's a reasonable inference for a couple of reasons. So if an officer turns on blue light and there's another officer involved in the chase, that officer who turned on the blue light because the person wouldn't stop, he is responsible for any excessive force that the other officer, unintended by the first officer, uses. I think... You're absolutely liable, in a qualified immunity case, you're absolutely liable for the misdeeds of anybody else who's trying to accomplish the same purpose you're trying to accomplish, which is to stop the car. I think as a constitutional... That can't be... and foreseeability. So the question is whether it's foreseeable. Yeah, and the district court found, A, that it was foreseeable that the car wouldn't stop, and B, that excessive force would be used, and I just don't understand that. Under Iqbal and Twombly, or even just, I am sorry, with due respect, common sense. The number of times I've been pulled over, and they're more than de minimis. You know, I didn't flee. He's a fast driver, so don't take that question too seriously. I pay my fines when it happens. And I don't see cars being chased all the time. We don't see cases where the people just take off and flee. I don't see how it's foreseeable that somebody's not going to pull over. I don't understand how that passes mustard, and that's the heart of her ruling. It was foreseeable there would be two unlawful actions when the blue lights went on. One, the vehicle would unlawfully speed away, and two, a law enforcement officer would use what is allegedly excessive force resulting in serious injury. I'm just telling you the problems I see with your case, and I promise I'm not going to take up any more of your time. I certainly understand that, and let me throw you a potential lifeline, but I'm not sure it's going to be enough. So paragraph 48 in the conspiracy count alleges that the conspiracy involved a conspiracy to violate the plaintiff's Fourth Amendment rights to one, be free from an unreasonable or illegal stop, two, to be free from a stop unsupported by probable cause, and three, to be free from the use of excessive force in the course of an arrest or stop. That's the closest you get to alleging that the alleged excessive force was part of this overall conspiracy. Why is that enough? If you take paragraph 48 of the complaint, and while I understand everyone in this room would immediately stop when an officer turned their lights on behind them, I think as much as we don't like it, and I'm not asking for this court to in any way suggest it's appropriate, but noncompliance is a foreseeable outcome in the realm of law enforcement. I understand that there should be compliance, and I wish that there were always compliance, we wouldn't have these types of situations. But noncompliance is foreseeable, the redundancies that officers have to deal with it, whether it's multiple officers, cattle bars on their cars, even the potential use of deadly force, are all strategies designed for that foreseeable noncompliance. And when you have a situation here, where the stop is already initiated at highway speeds, the posted speed limits on 95, when, as alleged in the complaint, the vehicle has attempted to exit 95, and the officers have deliberately routed it back onto 95, when you take those fact-specific instances, coupled with the unfortunate realization that noncompliance is foreseeable, I would submit that we have a situation where the use of excessive force, because we have alleged that the pit maneuver could not be used at these speeds with this type of a vehicle, with unrestrained occupants in the truck bed, that use of excessive force is foreseeable based on the nature of the conspiracy and based on the actions taken in furtherance of it. And those are the central reasons why we would support the District Court's finding, both its affirmative finding and its alternative finding, that the seizure in this case was unreasonable and it was foreseeably so. All right. Thank you very much. Mr. Saverin, you've got your rebuttal time left. And I've got a question for you when you're ready. Sorry? I've got a question for you when you're ready. I'm sure you do. Go ahead. Okay. So paragraph 32 of the complaint, this one combined with 48, I think, offer Mr. Kroger the best chance he has. I'm not sure that they're enough, but I want to ask you about 32. Yes. 32 says that to cover up the fact, and I'm quoting, to cover up the fact that the deputies made an illegal stop of the plaintiffs, so that suggests that there wasn't a basis for the stop, and to manufacture a justification for the stop, Prozen and Carter agreed that Prozen would falsify his police report to falsely state that Prozen observed that the subject vehicle failed to maintain its center lane and that the driver was not wearing a seat belt. Indeed, the police report reflects that those were the reasons for the stop, despite the fact that the basis for the report and the reasons for stopping the subject vehicle were false. If the complaint alleges that the reasons written by Prozen were false... Right. What do you think the reasons for the stop were? What's a fair inference to be drawn from the complaint? That they had a conspiracy to stop vehicles without the probable cause or the reasonable suspicion. That's, I guess, like... And not just a conspiracy. A cover-up is worse than a crime sometimes, as they say. That is true sometimes. And what was the basis for the stop in this case, then? What, if anything, do you draw from this paragraph of the complaint? Maybe nothing. If they lied about that as the basis for the stop, what was the basis? So we have to go through the looking glass here because it was the basis for the stop, but in terms of... No, no, no. I understand the allegations. I understand you're asking me about the allegations. I'm not trying to dodge the answer. We're stuck with you. I understand that. So what I'm saying is I can't tell you because all that they have said is without probable cause and reasonable suspicion because he wasn't certified to use the radar gun or visually. That is what we're left with. What I would like to do, I'd like to address paragraph 48 in terms of what Judge Jordan, what you read previously in conjunction with the district court's order and also paragraph 27. So paragraph 48 says that the conspiracy was to violate rights, to be free from an illegal stop, from stop and support by probable cause, and then does go on to say for use of excessive force. No other facts to support that. The judge on page... Well, the paragraph incorporates correctly the preceding factual paragraph. And I'm going to get to those. I'm going to get to those. Yes, but before I get to that, the district judge on page 13, footnote 1, says, Plaintiffs allege no facts supporting or even suggesting no facts. An agreement or understanding between Prosen and Carter to violate Fourth Amendment rights to be free from the use of excessive force in the course of an arrest or stop, citing paragraph 48. Now, when we go to the facts, which it really would come down to paragraph 27 in the amended complaint, it says that Prosen aided and abetted Carter's performance at the pit maneuver because he provided false information to Carter with the intent of effectuating an illegal stop, pursued the subject vehicle, and then brandished a weapon afterwards. The actionable constitutional injury here, at least the one that's stated here, is the excessive force. The paragraph 27 says that because he provided false information, supposedly that this vehicle was in fact speeding, perhaps, that that aids and abets the pit maneuver, which is a bridge too far. The question of the conspiracy, including excessive force, is debunked by the district courts finding that footnote and the allegations in the complaint. This is not a situation such as where there's a no-knock warrant where you might expect there to be some resistance or something along those lines. It is decidedly not foreseeable that not only would the vehicle flee, but even more so that Deputy Carter, of his own volition, would decide to use pit maneuver under the different variables that they list in paragraphs 22, 23, 24, about the gravity, the narrow wheelbase, the rollover, things of that sort, to say that because there was this hypothetical constitutional harm that's not actionable because they didn't stop, that therefore Deputy Prosen can be liable. It can't be through a conspiracy, so it's got to be through the approximate cause from an injury that did not occur in order to hold him liable. I say it's the same thing as if you have use of force by different officers making different decisions based on what they hear from another officer. It would make it vicarious liability. The only situation I'm familiar with is the duty to intervene. Very quickly, I'd like to point out the Grider case that's cited in the briefs on the intra-corporate conspiracy, even if we go through all this. The reason I want to bring this up is because the criminal exception does not apply here because the crimes for which these officers were indicted, which, by the way, never went anywhere, have to do with the cover-up, with things they did afterwards, false statements made, has nothing at all to do with the use of the radar gun or this conspiracy. They're separate things. So what we're left with are allegations of Section 1983 violations that have nothing to do with the basis for the criminal conspiracy. It would be different, I would say, if there was a prosecution or incarceration based on false reports, but we don't have that here. So even at the end of the day, I think the intra-corporate conspiracy doctrine applies without the crime exception. Before you sit down, let me ask you this. What is the status of the... Obviously, it's moved against this plaintiff, but the status of the criminal charges against the others? I thought you might ask, so I checked yesterday to be sure. The only other one was Carter, and it was Noel Prost, and he's not been re-indicted, and there's now a different process. And that's a matter of state court record? Yes, yes, I could supplement if you'd like, but, yes, that's the status of that. Mr. Sabourin, I want to ask you a non-merits question so you can finish off with a relatively easy one. You said at the beginning you were representing the estate of Deputy Prozin. Yes. And I may have missed this in the docket sheet. Have you filed papers to substitute at some point? Yes, both parties are now deceased, in fact. The style has been... I know one, but I hadn't seen it on your side. Deputy Prozin died first. He died from cancer unrelated to anything here. So, yes, the style of the case has been changed to estate versus estate. Okay. Here, both here and in a district court? We may have filed a suggestion of death in district court, but he died while the case was on appeal. I'm just wondering whether we have to do anything administrative on our end, or the docket's already been changed to deal with the circuit? Yes, yes. It has, okay. Unfortunately, we had to do it twice. Okay, well, thank you very much. We'll take the case under advisement. We are in recess for today. All rise.